FILED

NOV 25 2009

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENA S. ALVARADO, a minor, by and through her Guardian ad Litem LORENA ALVARADO, ) ) ) ) | 1:06-cv-1381 OWW DLB<br><br>FINAL PRETRIAL ORDER |
| Plaintiff, ) ) | Motion in Limine Date: 12/18/09 12:00 Ctrm. 3 |
| v. ) | Trial Date: 1/5/10 9:00 Ctrm. 3 (JT-20 days) |
| UNITED STATES OF AMERICA, ) ) | |
| Defendant. ) ) | |
| _____ ) | |
| UNITED STATES OF AMERICA, ) ) | |
| Third Party Plaintiff, ) ) ) | |
| v. ) ) | |
| CHILDREN'S HOSPITAL CENTRAL CALIFORNIA, JOHN E. DINSMORE, MD, DAVID HODGE, MD, and JILL GHANBARIAN, FNP, ) ) ) ) ) | |
| Third Party Defendants. ) ) | |
| _____ ) | |

## I.   JURISDICTION AND VENUE

1.   This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346(b) and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-80.  Venue is proper in this judicial district

1

1 | pursuant to 28 U.S.C. § 1391(b).

2 |                    II.   JURY/NON-JURY

3 |     1.   Pursuant to the FTC, Plaintiff is not entitled to a
4 | jury trial in this action against the United States.  28 U.S.C.
5 | § 2402.  Third-Party Defendants have each requested a jury trial
6 | on the third-party complaint.  The parties estimate that trial of
7 | this matter will take 20 days of trial time.

8 |                       III.   FACTS

9 | A.   Undisputed Facts

10 |     1.   The Plaintiff Lorena S. Alvarado is a minor appearing
11 | in this matter through her mother and guardian ad litem.   The
12 | Plaintiff received medical care at a federally funded facility
13 | identified as the Camarena Center in Madera, California from
14 | October 14, 2004 through October 22, 2004.  All of the care she
15 | received at that facility was provided by either nursing staff or
16 | a physician's assistant by the name of Evangelina Nunez who was
17 | operating under the supervision of the medical director of the
18 | facility who did not see the patient.  Ms. Nunez diagnosed the
19 | Plaintiff's condition as related to either a kidney infection or
20 | a urinary tract infection and rendered treatment based on that
21 | diagnosis.

22 |     2.   On October 22, 2004 the Plaintiff's mother took her to
23 | Children's Hospital of Central California where she was seen in
24 | the emergency room by a Dr. Shahbazian who was a resident
25 | physician at the hospital at that time assigned to the pediatric
26 | surgical group.  Certain radiology studies were performed at that
27 | hospital at the request of Dr. Shahbazian which demonstrated
28 | evidence of free fluid in the patient's abdomen caused by a

perforated appendix.  This diagnosis was confirmed by John E.
Dinsmore, M.D., the staff pediatric surgeon who was responsible
for the patient's care and he made a medical judgment to treat
her initially with medical therapy which included the
administration of three antibiotics including Gentamicin all of
which she received as an inpatient at the hospital up to the time
of her discharge on November 4, 2004.

     3.   During the patient's stay in the hospital she was seen
by Dr. Dinsmore, and two nurse practitioners assigned to the
pediatric surgical unit, Lisa Gilliam and Jill Ghanbarian as well
as Dr. Dinsmore and during his absence on vacation, the Third-
Party Defendant David Hodge, M.D.

     4.   At the time the patient was discharged on November 4,
2004, Dr. Dinsmore was on vacation and Dr. Hodge and nurse
practitioner Ghanbarian oversaw the discharge of the patient and
the discharge orders that went with her including instructions
for her to continue to receive antibiotics including Gentamicin
at home under the care and oversight of a home health nurse who
is provided as a part of the care structure of Children's
Hospital.  As a part of the discharge orders the antibiotics were
to be discontinued after November 9, 2004 and that in fact did
occur.

     5.   By prearrangement the patient was seen in the
outpatient pediatric surgical group's clinic on November 10, 2004
by nurse practitioner Ghanbarian at which time she had no
complaints.  When seen again at the clinic on November 12, 2004
she did complain of frequent vomiting but had no other complaints
and no new therapies were instituted and she was instructed to

3

have a repeat CT scan done on November 15, 2004 pursuant to previous scheduling.

6.    The patient did undergo the repeat CT scan on November 15, 2004 which indicated that one of the abscesses was resolving by virtue of the fact that it had shrunk in size but that abscess was still present as was another abscess.  Because of continued complaints of vomiting and the continued presence of the abscesses nurse practitioner Ghanbarian, with the approval by telephone of Dr. Dinsmore who had returned to the hospital but was in surgery that day, Gentamicin therapy was reordered for a period of 14 days.

7.    Thereafter, the patient was followed by Children's Home Care Unit of Children's Hospital and Surgery Clinic and her Gentamicin therapy was started either on November 15 or 16 and continued through either November 20 or 21 when the mother voluntarily discontinued the medication because the child was not feeling well.

8.    On November 23, 2004 the Plaintiff presented at the pediatric surgery outpatient clinic office with continued complaints of vomiting.  She was seen by the resident Dr. Shahbazian who consulted with Dr. Hodge the pediatric surgeon on call at the time because Dr. Dinsmore was again on vacation, and pursuant to Dr. Shahbazian's order a follow-up CT scan was done on November 23, 2004 which again revealed the presence of the abscesses although smaller in size.

9.    On November 24, 2004 after the Plaintiff's mother had returned to the clinic requesting records for a second opinion on the child she was advised to bring the child to the emergency

4

room at Children's Hospital which she did in the afternoon of that date.  She was diagnosed as being in acute renal failure and certain blood chemistry tests were done which demonstrated high Gentamicin levels in the patient's blood.  At that time her care was assumed by a nephrologist, Dr. Murphy, and the patient underwent kidney dialysis on two occasions to assist the kidney function.  The Gentamicin levels were tested daily in her blood and eventually were found to be therapeutic.  No further dialysis was necessary and on December 5, 2004 the patient was discharged from the hospital.

10.  While the patient initially did sustain acute kidney failure, testimony of the various pediatric nephrologists who have cared for her confirms that the kidney problem has resolved and that she has no permanent residuals from the temporary renal failure.  The patient's residual disabilities have to do with a loss of hearing aided by bilateral hearing aids and some level of impairment of her balance apparently related to the hearing loss. The patient continues to be seen at the nephrology clinic at Children's Hospital for extreme obesity and problems with high blood pressure neither of which have anything to do with the medical therapy related to her treatment for the ruptured appendix according to the deposition testimony of her treating nephrologists.

The parties agree that the undisputed facts will be read by the Court to the jury prior to opening statements.

B.   Disputed Facts

1.   Whether Evangelina Nunez PA, as a deemed employee of the United States, was negligent in the care of the Plaintiff on

1        a.    October 14, 2004;

2        b.    October 15, 2004;

3        c.    October 18, 2004;

4        d.    October 19, 2004;

5        e.    October 22, 2004.

6   2.   Whether the treatment Plaintiff received at the
7   Camarena Clinic is the legal and proximate cause of Plaintiff's
8   Gentamicin toxicity.

9   3.   Whether Plaintiff and/or her mother and guardian ad
10  litem contributed to the alleged delay in diagnosis of
11  appendicitis based upon their failure to complete the testing
12  ordered on October 18, 2004, and failure to appear at the follow-
13  up examination on October 19, 2004.

14  4.   Whether Dr. Dinsmore's decision to treat Plaintiff's
15  appendicitis medically rather than surgically on October 23,
16  2004, met the standard of care.

17  5.   Whether the window of opportunity to surgically treat
18  appendicitis closed prior to October 24, 2004.

19  6.   Whether Plaintiff received Gentamicin on November 15,
20  2004, as prescribed.

21  7.   Whether Plaintiff stopped the Gentamicin on November
22  21, 22, or 23, 2004.

23  8.   If in fact the United States is liable for the alleged
24  failure to diagnose appendicitis, whether the chain of causation
25  was broken by Plaintiff's discharge from CHCC on November 4,
26  2004.

27  9.   If in fact the United Stated is liable for the alleged
28  failure to diagnose appendicitis, whether the chain of causation

was broken when the Gentamicin was stopped on November 9, 2004.

10.   Whether the Gentamicin test on November 4, 2004, was an accurate reading.

11.   Whether the Gentamicin test on November 5, 2004, was an accurate reading.

12.   Whether the increase in serum Creatinine from .5 to .7 and the increase of BUN from 9 to 11 measured on November 4, 2004, was medically significant.

13.   Whether the serum Creatinine of .7 and the increase of BUN from 11 to 14 measured on November 5, 2004, was medically significant.

14.   Whether it fell below the standard of care to re-start Gentamicin on November 15, 2004, without determining the Plaintiff's renal function.

15.   Whether the "pre-printed order" dated November 4, 2004, was a protocol document and, if so, was FNP Ghanbarian's failure to use the pre-printed order on November 15, 2004, or her failure to order Gentamicin and/or renal function tests on November 15, 2004, fell below the standard of care.

16.   Whether it fell below the standard of care for FNP Ghanbarian to order Gentamicin on November 15, 2004, without monitoring Gentamicin levels after the third or fourth dose.

17.   Whether it fell below the standard of care, for Dr. Dinsmore to leave FNP Ghanbarian in charge of the administration of Gentamicin on November 15, 2004.

18.   Whether it fell below the standard of care, for Dr. Dinsmore to leave on a planned, two-week vacation, on November 18, 2004, without formally appointing a supervising

physician for FNP Ghanbarian and without ensuring that
appropriate Gentamicin tests and renal function tests were
ordered before he left on vacation.

19.   Whether, during the planned absence of Dr. Dinsmore, it
was Dr. Hodge's responsibility to supervise FNP Ghanbarian based
upon his role in Dr. Dinsmore's practice group and his prior role
in the care of Plaintiff.

20.   Whether it met the standard of care for FNP Ghanbarian
to prescribe Gentamicin on November 15, 2004, for a period of 14
days without ordering laboratory work, including testing for
Gentamicin.

21.   Whether it met the standard of care for FNP Ghanbarian
to prescribe Gentamicin on November 15, 2004, for a period of 14
days without ordering laboratory work, including testing
Plaintiff's renal function.

22.   Whether it met the standard of care for FNP Ghanbarian
to respond to Knudson's email on November 17, 2004, without
testing Gentamicin levels and renal function.

23.   Whether it met the standard of care for FNP Ghanbarian
to ignore the contacts made by Dolan on November 22 and 23, 2004.

24.   Whether Dr. Dinsmore was negligent in his supervision
of FNP Ghanbarian.

25.   Whether Dr. Dinsmore's decision to dose and monitor
Gentamicin between November 15 through November 29, 2004, was a
duty he could delegate to FNP Ghanbarian.

26.   Whether the standard of care is the same for an FNP as
it is for an MD.

27.   Whether the injuries suffered by Plaintiff from

8

Gentamicin toxicity include any loss of future earning capacity.

28.   Whether Plaintiff's future medical expenses reasonably include Tai Chi.

All remaining material facts are disputed.


With regard to the Third-Party Defendant Children's Hospital and Jill Ghanbarian FNP, the following disputed factual issues are present in the case.

1.   Was the Third-Party Defendant Children's Hospital and Jill Ghanbarian FNP negligent in their care of the patient?

2.   Is the United States Government entitled to full or partial indemnification from Children's Hospital and Jill Ghanbarian FNP should the court find that employees of the United States Government were negligent in their care of the plaintiff and that that negligence was a legal cause of her claimed injuries and damages?

All remaining material facts are disputed.


With regard to the Third-Party Defendant John E. Dinsmore, M.D., the following disputed factual issues are present in the case.

1.   Was the Third-Party Defendant John E. Dinsmore, M.D. negligent in his care of the patient?

2.   Is the United States Government entitled to full or partial indemnification from Dr. Dinsmore should the court find that employees of the United States Government were negligent in their care of the plaintiff and that that negligence was a legal cause of her claimed injuries and damages?

1    All remaining material facts are disputed.

2

3    With regard to the Third-Party Defendant David Hodge, M.D.,

4    the following disputed factual issues are present in the case.

5    1.   Was the Third-Party Defendant David Hodge, M.D.

6    negligent in his care of the patient?

7    2.   Is the United States Government entitled to full or

8    partial indemnification from Dr. Hodge should the court find that

9    employees of the United States Government were negligent in their

10   care of the plaintiff and that that negligence was a legal cause

11   of her claimed injuries and damages?

12   All remaining material facts are disputed.

13

14   **IV.   DISPUTED EVIDENTIARY ISSUES**

15   1.   Plaintiff: Plaintiff will seek to preclude testimony of

16   Jerald Udinsky, Ph.D. if the sources of the data upon which his

17   opinion are based are not produced.

18   2.   Plaintiff will seek to preclude any testimony or

19   evidence concerning the alleged failure of Ms. Alvarado's mother

20   in missing a dose of Bactrim, the alleged failure to take

21   Plaintiff into the Health Center on October 19, 2004, the alleged

22   failure to get a KUB, or any reference to family litigation

23   between Plaintiff's's mother and her step family.

24   3.   Defendant, United States: The United States will seek

25   to preclude the testimony of any witness not disclosed pursuant

26   to Rule 26, and to the extent any such testimony is allowed, will

27   request the opportunity to depose any such witness.

28   4.   Third-Party Defendant, Children's Hospital/Jill

Ghanbarian:  We would reserve the right at the time of trial to raise any evidentiary issues that may become evident at that time.

5.   Third-Party Defendant, Dr. Dinsmore:  On behalf of Third-Party Defendant Dr. Dinsmore there are no disputed evidentiary issues assuming this title references admissibility of evidence that the Third-Party Defendant John E. Dinsmore, M.D. is presently aware of.  However, we would reserve the right at the time of trial to raise any evidentiary issues that may become evident at that time.

6.   Third-Party Defendant, Dr. Hodge:  We would reserve the right at the time of trial to raise any evidentiary issues that may become evident at that time.

### V.   SPECIAL FACTUAL INFORMATION

A.   Plaintiffs.

1.   The facts and issues described above provide information relevant to tort actions required by LR 16-281(a)(6)(iv).  Additionally, the parties provide additional responses.

2.   Plaintiff: Plaintiff provides the following information and intends to pursue the following affirmative defenses and claims:

Dates:  On October 14, 2005, October 15, 2004, October 18, 2004, October 22, 2004, Ms. Alvarado was seen at Camarena Health Center.  On these dates, Camarena Health Center failed to diagnose the appendicitis when the infection was still operable.

Place: Camarena Health Center, a federally funded health clinic.

General Nature of Incident:  Camarena Clinic failed to diagnose appendicitis resulting prolonged infection. This

failure prevented surgical intervention which resulted in antibiotic treatment.  The antibiotic treatment caused hearing loss and vestibular dysfunction.

Particular Acts, Omissions or Conditions Constituting the Basis for Liability:  Camarena Health Center failed to consider appendicitis and persisted in the treatment of cystitis despite clear indications that Lorena was not suffering from this on October 14th, 15th, and 18.  This was below the standard of care.  Ms. Alvarado would have been a surgical candidate if the diagnosis was made as late as October 18, 2004.

Because Ms. Alvarado was not properly diagnosed on October 14th, 15th, or 18th, she was not a surgical candidate and would not have been placed on the Interval Pathway that resulted in some of her injuries.  Accordingly, Plaintiff's position is that Camarena Health Center is 100% liable for the injuries sustained by Stephanie Alvarado as a result of its failure to properly diagnose the appendicitis.

Particular Acts, Omissions or Conditions Constituting the Basis of any Defense:  It is expected that Defendant Camarena Health Center may attempt to place fault with Plaintiff's mother for failing to have a KUB performed. This test was not performed due to confusion at the lab to which Mrs. Alvarado brought Stephanie for the KUB and blood work.  Even if performed this is not a test that diagnoses appendicitis.  If the KUB was done it would likely have produced no useful information.

Camarena Health Center may also attempt to find fault with Plaintiff's mother for missing a dose of Bactrim.  However, Bactrim does not treat appendicitis and was worthless in treating her.

Camarena Health Center may also argue that somehow a family conflict prevented the clinic from diagnosing appendicitis. However, a family conflict should not have affected the ability of the practitioner to diagnose appendicitis.

Defendant Camarena Health Center has not identified nor produced any experts that will testify that it met the standard of care in its failure to diagnose the appendicitis in Lorena.

Age:  As of October 14, 2004, Stephanie Alvarado was 9 years old.  Ms. Alvarado is currently 14 years old.

Injuries sustained:  Ms. Alvarado currently suffers from bilateral hearing loss and vestibular dysfunction.

Prior Injury or Condition Worsened:  None.

Period of Hospitalization:  Ms. Alvarado was hospitalized from October 22, 2004 through November 15, 2004 and then from November 24, 2004 through December 5, 2004.

Medical Expenses:  All expenses to date were covered by Blue Cross.

Estimated Future Medical Expenses:  Future Medical Expenses are estimated to be $301,248.26.

Period of Total and/or Partial Disability: Ms. Alvarado has been determined by the Social Security Administration to be disabled as a result of her hearing loss and vestibular dysfunction as of 2007 to the present.

Annual Monthly or Weekly Earnings Prior to the Incident: None.

Earnings Lost to Date: None.

Estimated Diminution of Future Earnings Power:  Ms. Alvarado will lose an estimated $328,608 in future earning capacity as a result of her injuries.

General Damages:  Although Plaintiff's general damages far exceed this amount, Plaintiff seeks the maximum recoverable under Civ. Code 3333.2 (MICRA), $250,000

Defendant, United States: Defendant and Third-Party Plaintiff intends to pursue the following affirmative defenses and claims:

a.  Plaintiff's Negligence/Comparative Fault.  On October 18, 2004, Plaintiff failed to follow the order for a KUB X-ray and failed to return for an examination the following day. The injuries and/or damages plaintiff alleges to have incurred are the result of plaintiff's own negligence and failure to exercise due care, and any recovery to which plaintiff would otherwise be entitled, an entitlement the United States denies, must be reduced on a pro rata basis to the extent of her comparative fault.

b.  Superseding and Intervening Cause.  Plaintiff was

13

discharged from Children's Hospital on November 4, 2004, and all
antibiotics including Gentamicin were stopped on November 9,
2004.   Children's Hospital re-started Gentamicin on November 15,
2004, for a period of 14 days without monitoring renal function
and Gentamicin levels.   In the event the United States is found
to have been negligent, which negligence the United States
denies, the superseding and intervening negligence of third
parties for whom the United States cannot be held liable broke
any causal connection between the United States' negligence and
the plaintiff's alleged injuries, thereby cutting off the legal
effect of any negligence.

c.   Apportionment.   The United States did not prescribe any
Gentamicin for the Plaintiff and any liability for Gentamicin
related damages must be apportioned according to fault.   Any
liability on the part of the United States for non-economic
damages is governed by California Civil Code §§ 1431-1431.5, and
must be apportioned according to the responsibility of all
tortfeasors, named or unnamed.

Third-Party Defendant, Dr. Dinsmore: With regard to the
Third-Party Defendant John E. Dinsmore, M.D. while we certainly
understand and agree with the fact that the plaintiff is not
entitled to a jury trial against the United States Government, we
do believe that the Third-Party Defendant John E. Dinsmore, M.D.
is entitled to have the Government's allegations of
indemnification decided by a jury.   If the court agrees with our
position in that regard then, with the court's assistance, we
will need to develop a mechanism for proceeding with simultaneous

14

court and jury trials in this case.  A second legal issue that
will need to be decided is the question of whether or not conduct
of the third-party defendants meets the legal test of a
superseding and intervening cause thereby insulating the
Government from any damage award in the case.  Obviously, if the
court finds that that is so, then the plaintiff will not be
entitled to a verdict against the Government and the Government
will not be the subject of any adverse award from which it would
be entitled to seek contribution or indemnification from the
third-party defendants.  This presents an interesting threshold
legal issue.

Third-Party Defendants, Children's Hospital, Jill Ghanbarian
FNP and Dr. Hodge: Third-Party Defendants Children's Hospital,
Jill Ghanbarian FNP, and David Hodge, M.D. agree with the Third-
Party Defendant John E. Dinsmore, M.D. in this regard.

### VI.   RELIEF SOUGHT

1.   Plaintiff seeks monetary damages for the following:

General Damages:          $250,000

Future Medical Expenses: $301,248.26

Future Lost Earnings:     $328,608

The United States denies any liability and seeks dismissal of the
complaint.   In the event plaintiff is successful in holding the
United States liable for damages, the United States seeks a
determination of comparative fault, indemnification and
contribution against third-party defendants.

2.   Plaintiff cannot recover any amount for prejudgment
interest against the United States under FTCA.  28 U.S.C. § 2674.

1  Plaintiff cannot recover punitive damages against the United

2  States under the FTCA.   28 U.S.C. § 2674.

3                  VII.   DISPUTED ISSUES OF LAW

4  A.   Plaintiffs

5       1.   The courts require only that physicians exercise in

6  diagnosis and treatment that reasonable degree of skill,

7  knowledge, and care ordinarily possessed and exercised by members

8  of the medical profession under similar circumstances.  Mann v.

9  Cracchiolo (1985) 38 Cal.3d 18, 36.

10      2.   It is settled as a matter of law that where one who has

11 suffered personal injuries by reason of the tortious act of

12 another exercises due care in securing the services of a doctor

13 and his injuries are aggravated by the negligence of such doctor,

14 the law regards the act of the original wrongdoer as a proximate

15 cause of the damages flowing from the subsequent negligent

16 medical treatment and holds him liable therefor.   Maxwell v.

17 Powers (1994) 22 Cal.App.4th 1596, 1606.

18      3.   Superseding cause is an inappropriate instruction in

19 medical malpractice actions.  CACI 432, Directions For Use.

20 "The concurrence of the non-tortious cause does not absolve

21 defendant from liability for the tortious one."   Hughey v.

22 Candoli (1958) 159 Cal.App.2d 231, 240.

23      4.   In medical malpractice cases, with the problem of

24 multiple causes, "The law is well settled that in a personal

25 injury action causation must be proven within a reasonable

26 medical probability based upon competent expert testimony. Mere

27 possibility alone is insufficient to establish a prima facie

28 case."   Espinosa v. Little Co. of Mary Hosp. (1995) 31

                                16

1 | Cal.App.4th 1304, 1316.

2 | B.   Defendant.

3 |      1.   In California, a medical service provider must exercise
4 | that reasonable degree of skill, knowledge and care ordinarily
5 | possessed and exercised by members of their profession under
6 | similar circumstances.  Alef v. Alta Bates Hospital, 5
7 | Cal.App.4th 208, 215 (Cal.App. 1 Dist., 1992).  The conduct of a
8 | medical provider is compared to that of other providers of the
9 | same position and specialty, operating in the same locality and
10 | under similar circumstances.  Fraijo v. Hartland Hospital, 99
11 | Cal.App.3d 331, 341 (1979); Fein v. Permanente Medical Group, 38
12 | Cal.3d 137, 150-51 (1985).

13 |      2.   California follows a pure comparative negligence rule,
14 | as a plaintiff's negligence reduces his recovery but will never
15 | bar recovery.  Li v. Yellow Cab Co., 119 Cal.Rptr.858 (Cal.3d
16 | 1975).  The plaintiff's negligence is compared to the combined
17 | negligence of all tortfeasors, whether or not joined as parties,
18 | and reduced proportionately.  American Motorcycle Ass'n v.
19 | Superior Court of Los Angeles County, 20 Cal.3d 578, 578 P.2d
20 | 899, 146 Cal.Rptr.182 (1978).  This is referred to as partial
21 | equitable indemnity.  Id. at 578.  The common law doctrine of
22 | equitable indemnity is modified to permit partial indemnity on a
23 | comparative basis; several liability only is retained, but a
24 | party who satisfies more than his share of a claim may require
25 | proportionate contribution from the other parties joined.  Cal.
26 | Civ. Code  1431.2 (West 2007);  Cal. Civ. Code § 1432 (West
27 | 2007).

28 |      3.   Under California law, a plaintiff in a personal injury

17

1  action is entitled to recover damages for pain and suffering

2  proximately caused by the defendant.  Garfoot v. Avila, 261

3  Cal.Rptr. 924, 926 (Cal.App.3d 1989); See Hilliard v. A.H. Robins

4  Co., 196 Cal.Rptr. 117, 143 (Cal.App.3d 1989).  However, in an

5  action for injury caused by a healthcare provider, the maximum

6  recovery for non-economic loss compensation for pain, suffering,

7  inconvenience, physical impairment, disfigurement or other non-

8  pecuniary damage is $250,000.  Cal. Civ. Code § 3333.2 (West

9  2007).

10                    VIII.   ABANDONED ISSUES

11      1.   Plaintiff has abandoned damages claimed for a future

12  cochlear implant as well as damages resulting from high blood

13  pressure.

14      2.   By stipulation, Third-Party Defendant Jill Ghanbarian

15  FNP will be dismissed from this suit.

16                    IX.   WITNESSES

17  A.  Plaintiffs

18      1.   Attached hereto as Exhibit 1.  (Hold this Final

19  Pretrial Order for 3 days so the parties may provide any

20  supplemental identification of witnesses and/or exhibits).

21  B.  Defendants

22      1.   Attached hereto as Exhibit 2.

23  C.  Third-Party Defendant, Children's Hospital/Jill Ghanbarian.

24      1.   Attached hereto as Exhibit 3.

25  D.  Third-Party Defendant, Dr. Dinsmore.

26      1.   Attached hereto as Exhibit 4.

27  E.  Third-Party Defendant, Dr. Hodge.

28      1.   Attached hereto as Exhibit 5.

Counsel are each ordered to submit a list of witnesses to the court along with a copy for use by the Courtroom Deputy Clerk, on the same date and at the same time as the list of exhibits are to be submitted as ordered below.

CAUTION

Counsel are cautioned that expert witnesses, including percipient experts, must be designated as such.  No witness, not identified as a witness in this order, including "rebuttal" witnesses, will be sworn or permitted to testify at trial.

### X.   EXHIBITS, SCHEDULES AND SUMMARIES

The following is a list of documents or other exhibits that the parties expect to offer at trial.

CAUTION

Only exhibits so listed will be permitted to be offered into evidence at trial, except as may be otherwise provided in this order.  No exhibit not designated in this pretrial order shall be marked for identification or admitted into evidence at trial.

A.   Plaintiff's Exhibits

   1.   Attached hereto as Exhibit 6.

B.   Defendant's Exhibits

   1.   Attached hereto as Exhibit 7.

C.   Third-Party Defendant, Children's Hospital.

   1.   Attached hereto as Exhibit 9.

D.   Third-Party Defendant Dr. Dinsmore.

   1.   Attached hereto as Exhibit 8.

E.   Third-Party Defendant Dr. Hodge.

   1.   Attached hereto as Exhibit 10.

///

1                          XI.   DISCOVERY DOCUMENTS

2          Only specifically designated discovery requests and

3     responses will be admitted into evidence.  Any deposition

4     testimony shall be designated by page and line and such

5     designations filed with the Court on or before November 30, 2009.

6     The opposing party shall counter-designate by line and page from

7     the same deposition and shall file written objections to any

8     question and answer designated by the opposing party and filed

9     with the court on or before December 11, 2009.

10         Written discovery shall be identified by number of the

11    request.  The proponent shall lodge the original discovery

12    request and verified response with the courtroom deputy one day

13    prior to trial.  The discovery request and response may either be

14    read into evidence, or typed separately, marked as an exhibit, as

15    part of the exhibit marking process, and offered into evidence.

16    A.    Plaintiff's List

17         1.    Plaintiff does not anticipate using any discovery

18    answers provided in the case.

19    B.    Defendant's List

20         1.    Attached hereto as Exhibit 11.

21    C.    Third-Party Defendant Children's Hospital.

22         1.    None.

23    D.    Third-Party Defendant Dr. Dinsmore.

24         1.    None.

25    E.    Third-party Defendant Dr. Hodge.

26         1.    None.

27                          XII.   STIPULATIONS

28         1.    The parties stipulate to the authenticity and

                                 20

admissibility of the records produced by the following entities: Camarena Center; Children's Hospital Central California; Children's Home Care; Brent Lanier, MD; Larry M. Miller, MD; Lincoln Elementary School; Merced Hearing Aid; Rogelio Hernandez, MD; and, San Joaquin Valley Rehabilitation.

    2.   Children's Hospital Central California was at all relevant times the employer of Jill Ghanbarian FNP, Steffeney Dolan, Pharm.D. and Sandra Knudson.  Children's Home Care is a component of Children's Hospital Central California. At all relevant times FNP Ghanbarian was licensed by the State of California as a Family Nurse Practitioner holding a furnishing license which authorizes her to, among other things, order laboratory tests and prescribe medication under the supervision of a licensed physician.

XIII.   AMENDMENTS - DISMISSALS

    1.   The United States has agreed to dismiss Third-Party Defendant Jill Ghanbarian, FNP, pursuant to the request of Children's Hospital Central California, upon execution by all parties of a written stipulation.  The stipulation is based upon the admission of Children's Hospital that, at all relevant times, FNP Ghanbarian was employed by Children's Hospital and was acting within the scope of her employment.  Children's Hospital has agreed to indemnify the United States for any damages assessed based upon the acts and omissions of FNP Ghanbarian made in connection with this case.

    2.   The parties do not anticipate any further amendments to the pleadings, dismissals, additions or substitutions of parties and there are no defaulting parties herein.

XIV.   FURTHER TRIAL PREPARATION

A.   Trial Briefs.

Counsel are directed to file a trial brief in this matter on or before December 20, 2009.  No extended preliminary statement of facts is required.  The brief should address disputed issues of substantive law, disputed evidentiary issues of law that will not be resolved in limine, and any other areas of dispute that will require resolution by reference to legal authority.

B.   Duty of Counsel To Pre-Mark Exhibits.

1.   Counsel for the parties are ordered to meet and conduct a joint exhibit conference on December 4, 2009, at 9:00 a.m. via telephone conference for purposes of pre-marking and examining each other's exhibits and preparing an exhibit list.  Any objections to exhibits shall be filed by December 11, 2009.  All joint exhibits will be pre-marked JX1-JX100; all of the plaintiff's exhibits will be pre-marked with numbers 101-200; all of the United States' exhibits will be pre-marked with numbers 201-450; Third-Party Defendant Children's Hospital's exhibits will be pre-marked with numbers 451-650; Third-Party Defendant Dr. Dinsmore's exhibits will be pre-marked with numbers 651-700; Third-Party Defendant Dr. Hodge's exhibits will be pre-marked with numbers 701-751.

2.   Each and every page of each and every exhibit shall be individually Bates-stamped for identification purposes, and paginated with decimals and arabic numerals in seriatim; i.e., 1.1, 1.2, 1.3 . . ..

3.   Following such conference, each counsel shall have possession of four (4) complete, legible sets of exhibits, for

22

use as follows:

      a.   Two (2) sets to be delivered to the Courtroom Deputy Clerk, Renee Gaumnitz, no later than 4:00 p.m. on December 30, 2009, an original for the court and one for the witness.

      b.   One (1) set to be delivered to counsel for the opposing party and one (1) set to be available for counsel's own use.

   4.   Counsel are to confer to make the following determination as to each of the exhibits proposed to be introduced into evidence and prepare separate indexes, one listing joint exhibits, one listing each party's exhibits:

      a.   Joint exhibits, i.e., any document which both sides desire to introduce into evidence, will be marked as a joint exhibit (JX), and numbered JX1-___.  Joint exhibits shall be listed as such in the exhibit list in a column that notes they are admitted into evidence without further foundation;

      b.   As to any exhibit, not a joint exhibit, to which there is no objection to its introduction into evidence, the exhibit will be marked as Plaintiff's Exhibit ___, or Defendant's Exhibit ___ in evidence, and will be listed in the exhibit list as the exhibit of the offering party;

      c.   The exhibit list shall include columns for noting objections to exhibits.  The first column will list any objections as to foundation; i.e., Plaintiff's Foundation 2 - "not authenticated."

      d.   The exhibit list shall include a second column for noting substantive objections to exhibits based on any other grounds; i.e., "hearsay, improper opinion, irrelevant."

1          e.   The exhibit list shall include a description of
2    each exhibit on the left-hand side of the page, and the three
3    columns outlined above (as shown in the example below).

4                            List of Exhibits

5                            Admitted        Objection      Other
     Exhibit #    Description  In Evidence    To Foundation Objection
6

7          f.   The completed exhibit list shall be delivered to
8    Renee Gaumnitz CRD on or before December 30, 2009, at 4:00 p.m.

9          g.   If originals of exhibits cannot be located, copies
10   may be used, however, the copies must be legible and accurate.
11   If any document is offered into evidence that is partially not
12   legible, the Court sua sponte will exclude it from evidence.

13   C.   Discovery Documents.

14        1.   Counsel shall file a list of discovery documents with
15   Renee Gaumnitz CRD at the same time and date as the witness and
16   exhibit lists are lodged with her, unless the discovery documents
17   are marked as exhibits, which counsel intend to use at trial by
18   designating by number, the specific interrogatory, request for
19   admission, or other discovery document.  Counsel shall comply
20   with the directions of subsection XII (above) for introduction of
21   the discovery document into evidence.

22   D.   Motions In Limine.

23        1.   The motions in limine shall be filed by November 23,
24   2009, and any responses shall be filed by December 11, 2009.  The
25   Court will conduct a hearing on motions in limine in this matter
26   on December 18, 2009, at 12:00 p.m. in Courtroom 3, Seventh
27   Floor, before the Honorable Oliver W. Wanger United States
28   District Judge, at which time all evidentiary objections, to the

                                   24

1  extent possible, will be ruled upon, and all other matters

2  pertaining to the conduct of the trial will be settled.

3  E.   Trial Documents.

4       1.   Exhibits To Be Used With Witness.   During the trial of

5  the case, it will be the obligation of counsel to provide

6  opposing counsel not less than forty-eight hours before the

7  witness is called to the witness stand, the name of the witness

8  who will be called to testify and to identify to the Court and

9  opposing counsel any exhibit which is to be introduced into

10  evidence through such witness that has not previously been

11  admitted by stipulation or court order or otherwise ruled upon,

12  and to identify all exhibits and other material that will be

13  referred to in questioning of each witness.   If evidentiary

14  problems are anticipated, the parties must notify the court at

15  least twenty-four hours before the evidence will be presented.

16  F.   Counsel's Duty To Aid Court In Jury Voir Dire.

17       1.   Counsel shall submit proposed voir dire questions, if

18  any, to Renee Gaumnitz CRD at rgaumnitz@caed.uscourts.gov on or

19  before December 30, 2009, at 4:00 p.m.   Counsel shall also

20  prepare a joint "statement of the case" which shall be a neutral

21  statement, describing the claims and defenses for prospective

22  jurors, to be used in voir dire.

23       2.   In order to aid the court in the proper voir dire

24  examination of the prospective jurors, counsel are directed to

25  lodge with the Court the day before trial a list of the

26  prospective witnesses they expect to call if different from the

27  list of witnesses contained in the Pre-Trial Order of the Court.

28  Such list shall not only contain the names of the witnesses, but

1  their business or home address to the extent known.  This does

2  not excuse any failure to list all witnesses in the Pre-Trial

3  Order.

4      3.   Counsel shall jointly submit, to Renee Gaumnitz CRD the

5  Friday before trial, a neutral statement of the claims and

6  defenses of the parties for use by the court in voir dire.

7  G.   Counsel's Duty To Prepare And Submit Jury Instructions.

8      1.   All proposed jury instructions shall be filed and

9  served on or before January 4, 2010, by 4:00 p.m.  Jury

10  instructions shall be submitted in the following format.

11     2.   Proposed jury instructions, including verdict forms,

12  shall be submitted via e-mail to dpell@caed.uscourts.gov

13  formatted in WordPerfect for Windows X3.  Counsel shall be

14  informed on all legal issues involved in the case.

15     3.   The parties are required to jointly submit one set of

16  agreed upon jury instructions.  To accomplish this, the parties

17  shall serve their proposed instructions upon the other fourteen

18  days prior to trial.  The parties shall then meet, confer, and

19  submit to the Court the Friday before the trial is to commence,

20  one complete set of agreed-upon jury instructions.

21     4.   If the parties cannot agree upon any instruction, they

22  shall submit a supplemental set of instructions designated as not

23  agreed upon by January 4, 2010, at 4:00 p.m.

24     5.   Each party shall file with the jury instructions any

25  objection to non-agreed upon instructions proposed by any other

26  party.  All objections shall be in writing and shall set forth

27  the proposed instruction objected to in its entirety.  The

28  objection should specifically set forth the objectionable matter

26

in the proposed instruction and shall include a citation to legal authority explaining the grounds for the objection and why the instruction is improper.  A concise statement of argument concerning the instruction may be included.  Where applicable, the objecting party shall submit an alternative proposed instruction covering the subject or issue of law.

6.  <u>Format</u>.  The parties shall submit one copy of each instruction.  The copy shall indicate the party submitting the instruction, the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the test of the instruction, the legal authority supporting the instruction, and a legend in the lower lefthand corner of the instruction: "Given," "Given As Modified," "Withdrawn" and "Refused" showing the Court's action with regard to each instruction and an initial line for the judge's initial in the lower right-hand corner of the instruction.  Ninth Circuit Model Jury Instructions should be used where the subject of the instruction is covered by a model instruction.

7.  All instruction should be short, concise, understandable, and neutral statements of the law.  Argumentative or formula instructions will not be given, and should not be submitted.

8.  Parties shall, by italics or underlining, designate any modifications of instructions from statutory authority, or any pattern instruction such as the Model Circuit Jury Instructions or any other source of pattern instructions, and must specifically state the modification made to the original form instruction and the legal authority supporting the modification.

9.   Proposed verdict forms shall be jointly submitted or if the verdict forms are unagreed upon, each party shall submit a proposed verdict form.   Verdict forms shall be submitted to the Courtroom Deputy Clerk on the first day of the trial.

10.   Failure to comply with these rules concerning the preparation and submission of instructions and verdict forms may subject the non-complying party and/or its attorneys to sanctions.

XV.   USE OF LAPTOP COMPUTERS/POWERPOINT FOR PRESENTATION OF EVIDENCE

1.   If counsel intends to use a laptop computer for presentation of evidence, they shall <u>contact Renee Gaumnitz CRD at least one week prior to trial</u>.   The Courtroom Deputy Clerk will arrange a time for any attorney to bring any laptop to be presented to someone from the Court's Information Technology Department, who will provide brief training on how the parties' electronic equipment interacts with the court's audio/visual equipment.   If counsel intend to use PowerPoint, the resolution should be set no higher than 1024 x 768 when preparing the presentation.

2.   ALL ISSUES CONCERNING AUDIO-VISUAL MATERIALS AND COMPUTER INTERFACE WITH THE COURT'S INFORMATION TECHNOLOGY SHALL BE REFERRED TO THE COURTROOM DEPUTY CLERK.

XVI.   FURTHER DISCOVERY OR MOTIONS

1.   Discovery has closed pursuant to status conference order.   Absent a stipulation, Plaintiff will seek a motion to preclude any evidence concerning the alleged failure of Ms. Alvarado's mother in missing a dose of Bactrim, the alleged

28

1  failure to take Ms. Alvarado into the Health Center on October
2  19, 2004, the alleged failure to get a KUB, or any reference to
3  family litigation between Ms. Alvarado's mother and her step
4  family.

5      2.    Further, if Defendant U.S.A. fails to provide the
6  source information for its expert Dr. Udinsky, Plaintiff will
7  seek that his testimony upon which such data is based be
8  precluded.

9      3.    The United States will seek to preclude the testimony
10 of any witness not disclosed pursuant to Rule 26, and to the
11 extent any such testimony is allowed, the United States will
12 request additional discovery.

13                    XVII.   SETTLEMENT

14     1.    Settlement efforts have been exhausted.

15                XVIII.   SEPARATE TRIAL OF ISSUES

16     1.    This issue will be addressed by in limine motions.

17     2.    Plaintiff suggests that the third party case be tried
18 first to determine the liability of the respective parties and
19 then the damages case.   This will allow a streamlined damages
20 case if it is determined that some of the cross-defendants are
21 not liable.   The United States agrees.

22     3.    The Third-Party Defendant John E. Dinsmore, M.D. does
23 not believe there should be a separate trial of liability and
24 damages in this case and rather the entire case should be tried
25 together.   Children's Hospital and Dr. Hodge agree.

26          XIX.   IMPARTIAL EXPERTS, LIMITATIONS OF EXPERTS

27     1.    The parties see no basis for appointment by the Court
28 of impartial expert witnesses.   The United States believes that

1  the limitation of the number of expert witnesses is advisable.
2  It is duplicative for each of the Third-Party Defendants to
3  present an expert on the issues.

### XX.   ATTORNEYS' FEES

5  1.   Plaintiff will not seek attorney's fees.  Plaintiff
6  cannot recover any separate amount for attorney's fees in this
7  action.  28 U.S.C. 2412(d)(1)(A).  Plaintiff's attorney fees are
8  capped by the FTCA and must be paid out of any judgment awarded.
9  28 U.S.C. § 2678.

### XXI.   ESTIMATE OF TRIAL TIME

11  1.   Twenty days.

### XXII.   TRIAL DATE

13  1.   January 5, 2010, at 9:00 a.m., in Courtroom 3, on the
14  Seventh Floor.

### XXIII.   NUMBER OF JURORS AND PEREMPTORY CHALLENGES

16  1.   There will be an eight person jury.  Peremptory
17  challenges are allocated as follows: Third-Party Plaintiff shall
18  have 4 challenges; and Third-Party Defendants shall have 4
19  challenges to be jointly exercised.

### XXIV.   AMENDMENT OF FINAL PRETRIAL ORDER

21  1.   The Final Pretrial Order shall be reviewed by the
22  parties and any corrections, additions, and deletions shall be
23  drawn to the attention of the Court immediately.  Otherwise, the
24  Final Pretrial Order may only be amended or modified to prevent
25  manifest injustice pursuant to the provisions of Fed. R. Civ. P.
26  16(e).

### XXV.   MISCELLANEOUS

28  1.   Most of the witnesses in this case are medical

30

professionals. Many of them are located outside of the Eastern District of California. In order to minimize the disruption to the schedule of the witnesses and to promote the efficient use of the court's time, the parties request witnesses be scheduled in advance and that time limits be imposed.

2.    The Third-Party Defendant John E. Dinsmore, M.D. agrees that efforts should be made by the parties to minimize the disruption of scheduling of trial witnesses and while we would oppose time limits being imposed on the testimony of any particular witnesses we do think it would be appropriate for all parties to at least in a general sense identify when they expect to call certain witnesses and then specifically at the close of court business each day the party who is putting the case on the following day should notify all other parties as to who they intend to call as witnesses the next day for efficiency of both direct and cross-examination.

3.    The Third-Party Defendant John E. Dinsmore, M.D., agrees there is no basis for the appointment by the court of an expert witness. The Third-Party Defendant John E. Dinsmore, M.D. also believes that there should be no limitation on the expert witnesses called save and except where there may be absolute duplication of testimony on specific issues. Each of the third-party defendants find themselves in a different liability position from the other third-party defendants and should be entitled to submit their own expert testimony on those subjects.

4.    With regard to damage experts in the interest of judicial economy the third-party defendants have jointly agreed on who they will call as an economist, a life care planner and a

31

vocational rehabilitation specialist.

   5.   Third-Party Defendants Children's Hospital, Jill Ghanbarian FNP, and David Hodge, M.D. agree with the Third-Party Defendant John E. Dinsmore, M.D. in this regard.

   6.   The parties shall observe a forty-eight hour notice period before a witness is called, to identify the witness and the exhibit that will be used with that witness.

DATED:   November 24, 2009.

_____
Oliver W. Wanger
UNITED STATES DISTRICT JUDGE

# EXHIBIT 1

## Plaintiff Lorena S. Alvarado's Witnesses

1. Plaintiff Lorena S. Alvarado

2. Lorena Alvarado, mother of plaintiff Lorena S. Alvarado.

3. Jose Alvarado, father of plaintiff Lorena S. Alvarado

4. Evangelina Nunez, PAC

5. Elaine Acasio, MA

6. Kenneth Bernstein, M.D.

7. Carolyn Rosel

8. Socorro Vizcarra

9. Nancy Hernandez

10. Araceli Garcia

11. John E. Dinsmore, M.D.

12. Larry M. Miller, M.D.

13. Jerome L. Murphy, M.D.

14. Audra Johnson, RD, CSP

15. James Prochazka, M.D.

16. Valeriano C. Simbre, II, M.D.

17. Rogelio Hernandez, M.D.

18. L. Richard Feldenberg, M.D.

19. Jill Carson, M.D.

20. Randy Shahbazian, M.D.

21. Jorge Montes, M.D.

22. Karen Dahl, M.D.

23. Sandra Sanchez, MA

24. William Hastrup, Jr., M.D.

25. Sandra Carlsen, M.D.

26. J. Charles Smith, M.D.

27. Darin S. Smith., M.D.

28. Paveen K. Jindal, M.D.

29. Jill Ghanbarian, FNP

30. Kenneth Bernstein, M.D.

31. David S. Hodge, M.D.,

32. John E. Dinsmore, M.D.

33. Douglas Tamura, M.D.

34. William Palk, M.D.

35. Parveen K. Jindal, M.D.

36. Syed S. Kamal, M.D.

37. Mary Towne – Merritt, RD, CSP

38. Brent Lanier, M.D.

39. Nancy Wubenhorst, MPT

40. Augie Valencia

41. Nancy Parker, RN, PHN

42. Patrick Johnson

43. Patrick F. Mason, Ph.D.

44. Karen L. Aznavoorian, MA, CC, CLCP

45. Edward L. Bennett, MA, CRC, CDMS

46. Lawrence Drew, M.D.

47. Barry N. Gardiner, M.D.

48. Any other witness identified by any other party.

#105790

# EXHIBIT 2

**DEFENDANT UNITED STATES OF AMERICA'S
EXHIBIT 2 TO THE JOINT PRE-TRIAL STATEMENT**

**DEFENDANT USA'S WITNESSES**

1.  ACASIO, Elaine
    Darin M. Camarena Medical Health Centers, Inc.
    c/o Jeffrey J. Lodge, AUSA

2.  ALBEE, Tracy RN (expert)
    MediLegal
    A Professional Nursing Corporation
    1852 W. Eleventh Street
    Suite 333
    Tracy, California 95376

3.  ALVARADO, Lorena
    Plaintiff's mother and her Guardian *Ad Litem*
    c/o Steven J. Brewer, Esq.

4.  ALVARADO, Lorena S.
    Plaintiff
    c/o Steven J. Brewer, Esq.

5.  BELKNAP, Steven MD (expert)
    Northwestern University Feinberg School of Medicine
    750 North Lake Shore Drive, 10th Floor
    Chicago, Illinois 60611

6.  BERNSTEIN, Kenneth E. MD
    Darin M. Camarena Medical Health Centers, Inc.
    c/o Jeffrey J. Lodge, AUSA

7.  BLUMENKRANTZ, Michael MD (expert)
    Century City Medical Plaza
    2080 Century Park East, Suite 707
    Los Angeles, California 90067

8.  BRAUTBAR, Nachman MD (expert)
    6200 Wilshire Blvd., Suite 1000
    Los Angeles, California 90048

9.  DINSMORE, John E. MD
    Third-Party Defendant
    c/o Lawrence E. Wayte, Esq.

10. DOLAN, Steffeny Pharm.D. (percipient & expert)
    Children's Hospital Central California
    c/o Jerry D. Jones, Esq.

11. FALLAS, Moses MD (expert)
    8670 Wilshire Blvd., Suite 205
    Beverly Hills, California 90211

12. FIELDS, Donald W. DO
    7407 North Cedar Avenue, Suite 103
    Fresno, California 93720

13. GARCIA, Arasella
    Darin M. Camarena Medical Health Centers, Inc.
    c/o Jeffrey J. Lodge, AUSA

14. GHANBARIAN, Jill FNP
    Third-Party Defendant
    Children's Hospital Central California
    c/o Jerry D. Jones, Esq.

15. GILLIAM, Lisa PNP
    Children's Hospital Central California
    c/o Jerry D. Jones, Esq.

16. HARTMAN, Gary MD (expert)
    Dept. Of Pediatric Surgery
    Stanford Univ. School of Medicine
    780 Welch Road, Suite 206
    Stanford, California  94305

17. HERNANDEZ, Rogelio MD
    Madera Children's Medical Clinic
    1130 Country Club Drive, Suite F
    Madera, California 93638

18. HODGE, David MD
    Third-Party Defendant
    c/o Robert W. Hodges, Esq.

19. KAMAL, Syed Shahid MD
    Children's Hospital Central California
    c/o Jerry D. Jones, Esq.

20. KNUDSON, Sandra RNC (percipient & expert)
    Children's Hospital Central California
    c/o Jerry D. Jones, Esq.

21.  LANIER, Brent Joseph MD
     1351 E. Spruce Avenue
     Fresno, California 93720

22.  MILLER, Larry Michael MD
     4770 W. Herndon Avenue
     Fresno, California 93722

23.  MURPHY, Jerome, MD
     Children's Hospital Central California
     c/o Jerry D. Jones, Esq.

24.  NUNEZ, Evangelina PA
     Darin M. Camarena Medical Health Centers, Inc.
     c/o Jeffrey J. Lodge, AUSA

25.  PROBER, Charles G. MD (expert)
     Dept. Of Pediatrics
     Division of Infectious Diseases
     Stanford Univ. Medical Ctr., G312
     300 Pasteur Drive
     Stanford, California 94305-5208

26.  RATUITA, Emilie Joy Pharm.D.  (By deposition only)
     502 Weiner Way
     San Ramon, California 94582

27.  ROSEL, Carolyn
     Darin M. Camarena Medical Health Centers, Inc.
     c/o Jeffrey J. Lodge, AUSA

28.  SARKISIAN, Ricky Ph.D. (expert)
     Valley Rehabilitation Services, Inc.
     545 E. Alluvial Avenue, Suite 116
     Fresno, California 93720

29.  SHAHBAZIAN, Randy MD
     Children's Hospital Central California
     c/o Jerry D. Jones, Esq.

30.  SHAUL, Donald MD (expert)
     Children's Hospital of Los Angeles
     Pediatric Surgery
     4650 Sunset Blvd., Mail Stop 100
     Los Angeles, California 90027

31.   UDINSKY, Jerald Ph.D. (expert)
      The Udinsky Group
      Business and Labor Appraisers
      2941 Telegraph Avenue
      Berkeley, CA   94705

32.   VOLK, Erik MA (expert)
      3650 Mt. Diablo Boulevard, Suite 104
      Lafayette, California 94549

33.   WUBENHORST, Nancy MPT
      San Joaquin Valley Rehabilitation/Fresno Outpatient and
      Fitness Center
      7033 North Fresno Street, Suite 101
      Fresno, California

# EXHIBIT 3

## EXHIBIT 3

## WITNESS LIST FOR

## CHILDREN'S HOSPITAL CENTRAL CALIFORNIA

1. Lorena Stephanie Alvarado;

2. Lorena Alvarado;

3. Jill Ghanbarian, FNP;

4. Lisa Gilliam, FNP;

5. Sandra Knudson, RN;

6. Steffeny Dolan, Pharm.D.;

7. Steven Waite, Pharm.D.;

8. Emilie Joy Ratuita, Pharm.D.;

9. John E. Dinsmore, MD;

10. David Hodge, MD;

11. Nancy Hernandez;

12. Elaine Acasio;

13. Carolyn Rosel;

14. Evangelina Nunez;

15. Araselia Garcia;

16. Kenneth Edward Bernstein, MD;

17. Randy Shahbazian, MD;

18. Syed Shahid Kamal, MD;

19. Brent Joseph Lanier, MD;

20. Rogelio M. Hernandez, MD;

21. Larry Michael Miller, MD;

22. Jerome Linus Murphy, MD;

23. Valeriano Simbre, II, MD;

24. Nancy Wubenhorst, PT;

25. Neil Kornzweig, MD;

26. Pamela Schramm, LCSW;

27. Sahar Barayan, MD;

28. Richard Feldenberg, MD;

29. Jill Carson, MD;

30. Douglas Tamura, MD;

31. Harry Kallas, MD;

32. Karen Dahl, MD;

33. Parveen Jindal, MD;

34. Menouchehr Bazyani, MD;

35. Donald Fields, DO;

36. Sandra Carlsen, MD;

37. William Hastrup, MD;

38. Beverly Hayden-Pugh;

39. Aftab Ahmad Naz, MD;

40. Karen Rodriguez, NP;

41. Robert L. Poole, MD;

42. Colleen Nespor;

43. Charles Prober, MD;

44. Barry Gardiner, MD;

45. Lawrence Drew, MD;

46.     Gary Hartman, MD;

47.     Ricky A. Sarkisian, PhD;

48.     Linda Olzack, RN, CLCP;

49.     Erik Volk.

# EXHIBIT 4

## EXHIBIT 4

1. Mark Cohen/Eric Volk
2. Linda Olzack, R.N.
3. Donald Shaul, M.D.
4. Rick Sarkisian, Ph.D.
5. Dr. John Dinsmore
6. Brent Lanier, M.D.
7. Evangelina Nunez
8. Aracelia Garcia
9. Nancy Hernandez
10. Carolyn Rosel
11. David Hodge, M.D.
12. Jill Ghanbarian, F.N.P.
13. Valeriano C. Simbre, M.D.
14. Jerome Murphy, M.D.
15. Syed Kamal, M.D.
16. Rogelio Hernandez, M.D.
17. Nancy Wubenhorst, MPT
18. Randy Shahbazian, M.D.
19. Larry Miller, M.D.
20. Kenneth Bernstein, M.D.
21. Barry N. Gardiner, M.D.
22. Lisa Gilliam, PNP

# EXHIBIT 5

**Exhibit 5**

## WITNESSES

1.   Lorena Stephanie Alvarado;

2.   Lorena Alvarado;

3.   Jill Ghanbarian, FNP;

4.   Lisa Gilliam, FNP;

5.   Sandra Knudson, RN;

6.   Steffeny Dolan, Pharm.D.;

7.   Steven Waite, Pharm.D.;

8.   Emilie Joy Ratuita, Pharm.D.;

9.   John E. Dinsmore, MD;

10.   David Hodge, MD;

11.   Nancy Hernandez;

12.   Elaine Acasio;

13.   Carolyn Rosel;

14.   Evangelina Nunez;

15.   Araselia Garcia;

16.   Kenneth Edward Bernstein, MD;

17.   Randy Shahbazian, MD;

18.   Syed Shahid Kamal, MD;

19.   Brent Joseph Lanier, MD;

20.   Rogelio M. Hernandez, MD;

21.   Larry Michael Miller, MD;

22.   Jerome Linus Murphy, MD;

23.     Valeriano Simbre, II, MD;

24.     Nancy Wubenhorst, PT;

25.     Neil Kornzweig, MD;

26.     Pamela Schramm, LCSW;

27.     Sahar Barayan, MD;

28.     Richard Feldenberg, MD;

29.     Jill Carson, MD;

30.     Douglas Tamura, MD;

31.     Harry Kallas, MD;

32.     Karen Dahl, MD;

33.     Parveen Jindal, MD;

34.     Menouchehr Bazyani, MD;

35.     Donald Fields, DO;

36.     Sandra Carlsen, MD;

37.     William Hastrup, MD;

38.     Beverly Hayden-Pugh;

39.     Aftab Ahmad Naz, MD;

40.     Karen Rodriguez, NP;

41.     Robert L. Poole, MD;

42.     Colleen Nespor;

43.     Charles Prober, MD;

44.     Barry Gardiner, MD;

45.     Lawrence Drew, MD;

46.     Gary Hartman, MD;

47.     Ricky A. Sarkisian, PhD;

48.     Linda Olzack, RN, CLCP;

49.     Erik Volk.

# EXHIBIT 6

## Plaintiff Lorena S. Alvarado's Exhibits

1. Lorena S. Alvarado's Medical Records from Camarena Health Center from October 14, 2004 through October 22, 2004.
2. Lorena S. Alvarado's Medical Records from Children's Hospital from October 22, 2004 through February 28, 2005.
3. The expert disclosure report of Edward Bennett dated December 7, 2007 and attached exhibits.
4. The expert disclosure report of Edward Bennett dated June 11, 2009.
5. U.S. Census Bureau records demonstrating the difference income between disabled and able bodied workers.
6. The expert disclosure report of Dr. Drew dated January 28, 2009.
7. The expert disclosure report of Dr. Drew dated June 10, 2009.
8. The expert disclosure report of Karen Aznavoorian, M.A., CCC, CLCP dated June 11, 2009 and attached exhibits.
9. The expert disclosure report of Patrick Mason, Ph.D dated January 9, 2008.
10. The expert disclosure report of Patrick Mason, Ph.D. dated June 12, 2009.
11. The four reports of Patrick Mason, Ph.D. attached to the stipulation regarding his reports signed by all counsel, dated July 20, 2009.
12. The expert disclosure report of Barry Gardiner, M.D. dated June 11, 2009 and attached exhibits.
13. Visual aids depicting the information contained in the expert reports of all parties' experts.
14. The expert disclosure report of Barry Gardiner dated June 11, 2009.
15. Deposition of Lorena Alvarado V. I and II and attached exhibits.
16. Deposition of Lorena S. Alvarado and attached exhibits.
17. Deposition of Lawrence Drew, M.D. and attached exhibits.
18. Deposition of Patrick Mason, Ph.D. and attached exhibits.
19. Deposition of Karen Aznavoorian, M.A., CCC, CLCP and attached exhibits.
20. Deposition of Edward Bennett and attached exhibits.
21. Deposition of Barry Gardiner, M.D. and attached exhibits.
22. Deposition transcript of Jerald Udinsky, Ph.D. and attached exhibits.
23. Deposition transcript of Ricky Sarkesian, Ph.D. and attached exhibits.
24. Deposition transcript of Tracy Albee, PHN and attached exhibits.
25. Deposition transcript of Jerome Murphy, MD and attached exhibits.
26. Deposition transcript of Lisa Gilliam, PNP and attached exhibits.
27. Deposition transcript of Steffeny Dolan, Pharm.D. and attached exhibits from March 11, 2009 and July 24, 2009.
28. Deposition transcript of Sandra Knudson, RN and attached exhibits from March 11, 2009 and July 24, 2009.
29. Deposition transcript of Nachman Brautbar, M.D. and attached exhibits.
30. Deposition transcript of Kurt Volk, MA and attached exhibits.
31. Deposition transcript of Linda Olznack and attached exhibits.
32. Deposition transcript of Michael Blumenkratz, M.D. and attached exhibits.

33.   Deposition transcript of Moses J. Fallas, M.D. and attached exhibits.
34.   Deposition transcript of Nancy Wubenhorst, MPT and attached exhibits.
35.   Deposition transcript of Stephen Belknap, M.D. and attached exhibits.
36.   Deposition transcript of David Hodge, M.D. and attached exhibits.
37.   Deposition transcript of Randy Shabezian, M.D. and attached exhibits.
38.   Deposition transcript of John E. Dinsmore, M.D. and attached exhibits.
39.   Deposition transcript of Brent Lanier, M.D. and attached exhibits.
40.   Deposition transcript of Valeriano Simbre, M.D. and attached exhibits.
41.   Deposition transcript of Larry Miller, M.D. and attached exhibits.
42.   Deposition transcript of Rogelio Hernandez, M.D. and attached exhibits.
43.   Deposition transcript of Elaine Acasio and attached exhibits.
44.   Deposition transcript of Evangelina Nunes and attached exhibits.
45.   Deposition transcript of Arasella Garcia and attached exhibits.
46.   Deposition transcript of Nancy Hernandez and attached exhibits.
47.   Deposition transcript of Carolyn Rosel and attached exhibits.
48.   Deposition transcript of Syed Kamal, M.D. and attached exhibits.
49.   Deposition transcript of Kenneth Bernstein, M.D. and attached exhibits.
50.   Deposition transcript of Jill Ghanberian, FNP and attached exhibits.
51.   Deposition transcript of Karen Ann Rodriguez, RN, MN, CPNP-PC/AC
      and attached exhibits.
52.   Deposition transcript of Donald Fields, D.O. and attached exhibits.
53.   Deposition transcript of Donald Shaul, RN, M.D. and attached exhibits.
54.   Deposition transcript of Robert Poole, M.D. and attached exhibits.
55.   Deposition transcript of Gary Hartman, MD and attached exhibits.
56.   Deposition transcript of Colleen Nespor and attached exhibits.
57.   Deposition transcript of Charles Prober, M.D. and attached exhibits.
58.   Deposition transcript of Emilie Joy Ratuita and attached exhibits.
59.   Any supplemental information provided by experts to support their
      positions.
60.   Any exhibit identified or utilized by any other party in this action.

#105789

# EXHIBIT 7

**DEFENDANT UNITED STATES OF AMERICA'S
EXHIBIT 7 TO THE JOINT PRE-TRIAL STATEMENT**

**DEFENDANT USA'S EXHIBITS – SCHEDULES & SUMMARIES**

1.   Exhibits B, F, G, H, K and L attached to the expert
     deposition of Tracy Albee, RN, taken on August 21, 2009.

2.   Exhibits 3 and 10 attached to the expert deposition of
     Steven Belknap, MD, taken on August 27, 2009.

3.   Exhibits 3-10, inclusive, attached to the deposition of
     Kenneth Bernstein, MD, taken on January 8, 2009.

4.   Exhibits 4-10, inclusive, attached to the expert deposition
     of Michael Blumenkrantz, MD, taken on July 28, 2009.

5.   Exhibit 1 attached to the expert deposition of Nachman
     Brautbar, MD, taken on July 22, 2009.

6.   Exhibits 2-14, inclusive, attached to the deposition of John
     E. Dinsmore, MD, taken on May 22, 2009.

7.   Exhibits 2-18, inclusive, attached to the deposition of
     Steffeny Dolan, Pharm.D. taken on March 11, 2009; exhibits
     2-9, inclusive, attached to her expert deposition taken on
     July 24, 2009.

8.   Exhibits 4-8, inclusive, attached to the expert deposition
     of Moses Fallas, MD, taken on July 31, 2009.

9.   Exhibit 2, attached to the deposition of Donald W. Fields,
     DO, taken on March 30, 2009.

1        Defendant USA's Exhibit 7 to the Joint
         Pre-Trial Statement

10.  Exhibits 1, 3-4, 6, 7, 9-11, 14-15, 18, 23, 28, 31, 33-34,
     36-37, 53, 63-64, and 67, attached to the deposition of Jill
     Ghanbarian, FNP, taken on January 26, 2009.

11.  Exhibits 1-4, inclusive, attached to the deposition of Lisa
     Gilliam, PNP, taken on March 10, 2009.

12.  Exhibit 1, attached to the expert deposition of Gary
     Hartman, MD, taken on August 13, 2009.

13.  Exhibit A, attached to the deposition of Rogelio M.
     Hernandez, MD, taken on January 15, 2009.

14.  Exhibits 1, 4, 14-15, 19, 31, 34-35 and 72, attached to the
     deposition of David Hodge, MD, taken on February 23, 2009.

15.  Exhibits 2-27, inclusive, attached to the deposition of
     Sandra Knudson, RNC, taken on March 11, 2009; exhibits 2-9,
     inclusive, attached to her expert deposition taken on
     July 24, 2009.

16.  All documents attached to the deposition of Bruce Joseph
     Lanier, MD, taken on January 13, 2009.

17.  Exhibits 1 and 2, inclusive, attached to the expert
     deposition of Charles G. Prober, MD, taken on August 11,
     2009.

18.  Exhibits 2-5, inclusive, attached to the deposition of
     Emilie Joy Ratuita, Pharm.D., taken on May 5, 2009.

19.  Exhibits 1, 3 and 5, attached to the expert deposition of
     Ricky Sarkisian, Ph.D., taken on September 1, 2009.

20. Exhibits to the deposition of Donald Shaul, MD taken on
    July 31, 2009.

21. Exhibits 3-7, and 11, attached to the expert deposition of
    Jerald Udinsky, Ph.D., taken on August 18, 2009.

22. Exhibits B, E-K, attached to the expert deposition of Erik
    Volk, MA, taken on August 12, 2009.

23. Documents produced in response to Subpoenas to Children's
    Hospital of Central California ("CHCC"); Children's Home
    Health Care ("CHHC"); Brent Lanier, MD; Larry M. Miller, MD;
    Lincoln Elementary School; Merced Hearing Aid; Rogelio
    Hernandez, MD; and, San Joaquin Valley Rehabilitation.

24. Initial and Supplemental Disclosures of Defendant and
    Third-Party Plaintiff United States of America ("USA").

25. Initial and Supplemental Disclosures of  Plaintiff  Lorena
    S. Alvarado ("Plaintiff").

26. Initial and Supplemental Disclosures of Third-Party
    Defendants Children's Hospital Central California ("CHCC")
    and Jill Ghanbarian, FNP ("Ghanbarian").

27. Initial and Supplemental Disclosures of Third-Party
    Defendant John E. Dinsmore, MD ("Dinsmore).

28. Initial and Supplemental Disclosures of Third-Party
    Defendant David Hodge, MD ("Hodge").

29. All documents produced by Plaintiff in response to Requests
    for Production of Documents.

3          Defendant USA's Exhibit 7 to the Joint
                       Pre-Trial Statement

30. Darin Camarena medical records for Lorena S. Alvarado.

31. CHCC's medical records for Lorena S. Alvarado.

32. All documents produced by CHCC in response to Requests for Production of Documents and Motion(s) to Compel.

33. All documents produced by Children's Home Care, a division of CHCC, in response to Requests for Production of Documents and Motion(s) to Compel.

34. All documents produced by Third-Party Defendant Dinsmore in response to Requests for Production of Documents.

35. All documents produced by Third-Party Defendant Hodge in response to Requests for Production of Documents.

36. Copies of the parties' expert reports and amended/revised reports and supporting documents subsequently produced, if any, with the exception of experts Karen Aznavoorian, RN, Edward L. Bennett, William Lawrence Drew, MD, Barry N. Gardiner, MD, Patrick F. Mason, Ph.D., Colleen Nespor, RN, Linda Olzack, RN, Robert L. Poole, Pharm.D., and Karen Ann Rodriguez RN's report(s).

The parties may supplement their respective exhibit lists up to the time of the pre-trial conference. The parties also reserve the right to supplement their exhibit lists for the purpose of cross or rebuttal examination, subject to the other parties objections pursuant to Rule 26, 37 or other applicable rules.

4          Defendant USA's Exhibit 7 to the Joint
Pre-Trial Statement

# EXHIBIT 8

## EXHIBIT 8

Medical records of the Plaintiff from:

1. Children's Hospital of Central California
2. Darin M. Camarena Health Center
3. Rogelio Hernandez, M.D.
4. San Joaquin Valley Rehabilitation
5. Northwest Medical Group
6. Brent Lanier, M.D.

Defendant, JOHN E. DINSMORE, M.D. adds the following Exhibits:

7.  The expert disclosure report of Barry Gardiner, M.D., dated June 11, 2009 and attached exhibits.

8.  Deposition transcript of Lorena Alvarado, Volumes 1 & 2 and attached exhibits.

9.  Deposition transcript of Lorena S. Alvarado and attached exhibits.

10. Deposition transcript of Barry Gardiner, M.D. and attached exhibits.

11. Deposition transcript of Ricky Sarkisian, Ph.D. and attached exhibits.

12. Deposition transcript of Jerome Murphy, M.D. and attached exhibits.

13. Deposition transcript of Lisa Gillium, PNP and attached exhibits.

14. Deposition transcript of Steffeny Dolan, Pharm.D and attached exhibits from March 11, 2009 and July 24, 2009.

15. Deposition transcript of Sandra Knudson, R.N., and attached exhibits from March 11, 2009 and July 24, 2009.

16. Deposition transcript of Eric Volk, M.A. and attached exhibits.

17. Deposition transcript of Linda Olzack, R.N. and attached exhibits.

18. Deposition transcript of Nancy Wubenhorst, MPT and attached exhibits.

19. Deposition transcript of John E. Dinsmore, M.D. and attached exhibits.

20. Deposition transcript of Brent Lanier, M.D. and attached exhibits.

21. Deposition transcript of Larry Miller, M.D. and attached exhibits.

22. Deposition transcript of Valeriano Simbre, M.D. and attached exhibits.

23. Deposition transcript of Rogelio Hernandez, M.D and attached exhibits.

24. Deposition transcript of Kenneth Bernstein, M.D. and attached exhibits.

25. Deposition transcript of Donald Shaul, M.D. and attached exhibits.

26. Deposition transcript of Emilie Joy Ratuita and attached exhibits.

27. Any supplemental information provide by experts to support their position.

28. Any exhibit identified or utilized by and other party in this action.

29. Exhibit 1 attached to the deposition of Gary Hartman, M.D. taken on August 13, 2009.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 River Park Place East
Fresno, CA 93720-1501

18802/00576-1475596.v1                            2

DEFENDANT JOHN E. DINSMORE, M.D.'S ADDENDUM TO DEFENDANT'S EXHIBIT LIST

# EXHIBIT 9

## EXHIBIT 9
## EXHIBIT LIST FOR
## CHILDREN'S HOSPITAL CENTRAL CALIFORNIA

1. Deposition transcript of Karen Rodriguez, including, but not limited

exhibits attached;

2. Expert report of Karen Rodriguez;

3. Curriculum Vitae of Karen Rodriguez;

4. Deposition transcript of Robert Poole, M.D., including, but not limited

to, exhibits attached;

5. Expert report of Robert Poole, M.D.;

6. Curriculum Vitae of Robert Poole, M.D.;

7. Deposition transcript of Colleen Nespor, including, but not limited to,

exhibits attached;

8. Expert report of Colleen Nespor;

9. Curriculum Vitae of Colleen Nespor;

10. Deposition transcript of Charles Prober, M.D., including, but not limited

to, exhibits attached;

11. Expert report of Charles Prober, M.D.;

12. Curriculum Vitae of Charles Prober, M.D.;

13. Deposition transcript of Linda Olzack, RN, CLCP, including, but not

limited to, exhibits attached;

14. Expert report of Linda Olzack, RN, CLCP;

15. Curriculum Vitae of Linda Olzack, RN, CLCP;

16.  Deposition transcript of Ricky Sarkisian, Ph.D., including, but not

limited to, exhibits attached;

17.  Expert report of Ricky Sarkisian, Ph.D.;

18.  Curriculum Vitae of Ricky Sarkisian, Ph.D.;

19.  Deposition transcript of Eric Volk, M.A., including, but not limited to,

exhibits attached;

20.  Expert report of Eric Volk, M.A.;

21.  Curriculum Vitae of Eric Volk, M.D.;

22.  Deposition transcript of Barry Gardiner, M.D., including, but not limited

to, exhibits attached;

23.  Expert report of Barry Gardiner, M.D.;

24.  Curriculum Vitae of Barry Gardiner, M.D.;

25.  Deposition transcript of Gary Hartman, M.D., including, but not limited

to, exhibits attached;

26.  Expert report of Gary Hartman, M.D.;

27.  Curriculum Vitae of Gary Hartman, M.D.;

28.  Deposition transcript of Lawrence Drew, M.D., including, but not limited

to, exhibits attached;

29.  Expert report of Lawrence Drew, M.D.

30.  Curriculum Vitae of Lawrence Drew, M.D.

31.  Deposition transcript of Jill Ghanbarian, N.P., including, but not limited

to, exhibits attached;

32.  Deposition transcripts of Sandra Knudsen, R.N., including, but not

limited to, exhibits attached;

33.   Deposition transcript of Lisa Gilliam, FNP, including, but not limited to, exhibits attached;

34.   Deposition transcripts of Steffeny Dolan, Pharm.D., including, but not limited to, exhibits attached;

35.   Deposition transcript of Emilie Joy Ratulta, Pharm.D., including, but not limited to, exhibits attached;

36.   Deposition transcript of Larry Miller, M.D., including, but not limited to, exhibits attached;

37.   Deposition transcript of Jerome Murphy, M.D., including, but not limited to, exhibits attached;

38.   Deposition transcript of Kenneth Edward Bernstein, MD, including, but not limited to, exhibits attached;

39.   Deposition transcript of Randy Shahbazian, MD, including, but not limited to, exhibits attached;

40.   Deposition transcript of Syed Shahid Kamal, MD, including, but not limited to, exhibits attached;

41.   Deposition transcript of Nancy Wubenhorst, PT, including, but not limited to, exhibits attached;

42.   Deposition transcript of Brent Joseph Lanier, MD, including, but not limited to, exhibits attached;

43.   Deposition transcript of Valeriano Simbre, II, MD, including, but not limited to, exhibits attached;

44.   Deposition transcript of Donald Fields, DO, including, but not limited to, exhibits attached;

45. Deposition transcript of Nancy Hernandez, including, but not limited to, exhibits attached;

46. Deposition transcript of Carolyn Rosel, including, but not limited to, exhibits attached;

47. Deposition transcript of Evangelina Nunez, including, but not limited to, exhibits attached;

48. Deposition transcript of Araselia Garcia, including, but not limited to, exhibits attached;

49. Deposition transcript of Elaine Acasio, including, but not limited to, exhibits attached;

50. Deposition transcript of David Hodge, MD, including, but not limited to, exhibits attached;

51. Deposition transcript of John E. Dinsmore, MD, including, but not limited to, exhibits attached;

52. Deposition transcripts of Lorena Stephanie Alvarado, including, but not limited to, exhibits attached;

53. Deposition transcripts of Lorena Alvarado, including, but not limited to, exhibits attached;

54. Medical chart of Lorena Stephanie Alvarado from Children's Hospital Central California;

55. Home Healthcare records of Lorena Stephanie Alvarado from Children's Hospital Central California;

56. Pelvis CT study of Lorena Stephanie Alvarado on November 15, 2004 at Children's Hospital Central California;

57.    Pelvis CT study of Lorena Stephanie Alvarado on November 23, 2004

at Children's Hospital Central California;

58.    Records of treatment of Lorena Stephanie Alvarado from San Joaquin

Valley Rehabilitation;

59.    Records of treatment of Lorena Stephanie Alvarado from Camarena

Medical Center;

60.    Records of treatment of Lorena Stephanie Alvarado from Madera

Children's Medical Clinic;

61.    Records of treatment of Lorena Stephanie Alvarado from Rogelio

Hernandez, M.D.;

62.    Records of treatment of Lorena Stephanie Alvarado from Northwest

Medical Group;

63.    Records of treatment of Lorena Stephanie Alvarado from Central

California Ear Nose & Throat;

64.    Records of treatment of Lorena Stephanie Alvarado from Eye-Q Vision

Center;

65.    Records of treatment of Lorena Stephanie Alvarado from Merced

Hearing Aid Center;

66.    Records of treatment of Lorena Stephanie Alvarado from Aftab Ahmad

Naz, MD;

67.    Records of treatment of Lorena Stephanie Alvarado from Neil

Kornzweig, MD;

68.    Insurance records regarding Lorena Stephanie Alvarado from Blue

Cross;

69.   Records regarding Lorena Stephanie Alvarado from California

Children's Services;

70.   School records of Lorena Stephanie Alvarado from Lincoln Elementary

School;

71.   School records of Lorena Stephanie Alvarado from Valley Park

Elementary;

72.   School records of Lorena Stephanie Alvarado from Madera Unified

School District;

73.   Demonstrative aids as well as any documents consulted by, referred to

or relied upon by the expert witnesses in forming their opinions or that form a basis

for their opinions, including but not limited to texts, periodicals, and articles;

74.   Any exhibit identified or utilized by any other party in this action.

# EXHIBIT 10

**Exhibit 10**

## EXHIBITS

1.     Deposition transcript of Karen Rodriguez;

2.     Expert report of Karen Rodriguez;

3.     Curriculum Vitae of Karen Rodriguez;

4.     Deposition transcript of Robert Poole, M.D.;

5.     Expert report of Robert Poole, M.D.;

6.     Curriculum Vitae of Robert Poole, M.D.;

7.     Deposition transcript of Colleen Nespor;

8.     Expert report of Colleen Nespor;

9.     Curriculum Vitae of Colleen Nespor;

10.     Deposition transcript of Charles Prober, M.D.;

11.     Expert report of Charles Prober, M.D.;

12.     Curriculum Vitae of Charles Prober, M.D.;

13.     Deposition transcript of Linda Olzack, RN, CLCP;

14.     Expert report of Linda Olzack, RN, CLCP;

15.     Curriculum Vitae of Linda Olzack, RN, CLCP;

16.     Deposition transcript of Ricky Sarkisian, Ph.D.;

17.     Expert report of Ricky Sarkisian, Ph.D.;

18.     Curriculum Vitae of Ricky Sarkisian, Ph.D.;

19.     Deposition transcript of Eric Volk, M.A.;

20.     Expert report of Eric Volk, M.A.;

21.     Curriculum Vitae of Eric Volk, M.D.;

22.   Deposition transcript of Barry Gardiner, M.D.;

23.   Expert report of Barry Gardiner, M.D.;

24.   Curriculum Vitae of Barry Gardiner, M.D.;

25.   Deposition transcript of Gary Hartman, M.D.;

26.   Expert report of Gary Hartman, M.D.;

27.   Curriculum Vitae of Gary Hartman, M.D.;

28.   Deposition transcript of Lawrence Drew, M.D.;

29.   Expert report of Lawrence Drew, M.D.

30.   Curriculum Vitae of Lawrence Drew, M.D.

31.   Deposition transcript of Jill Ghanbarian, N.P.;

32.   Deposition transcripts of Sandra Knudsen, R.N.;

33.   Deposition transcript of Lisa Gilliam, FNP;

34.   Deposition transcripts of Steffeny Dolan, Pharm.D.;

35.   Deposition transcript of Emilie Joy Ratuita, Pharm.D.;

36.   Deposition transcript of Larry Miller, M.D.

37.   Deposition transcript of Jerome Murphy, M.D.;

38.   Deposition transcript of Kenneth Edward Bernstein, MD;

39.   Deposition transcript of Randy Shahbazian, MD;

40.   Deposition transcript of Syed Shahid Kamal, MD;

41.   Deposition transcript of Nancy Wubenhorst, PT;

42.   Deposition transcript of Brent Joseph Lanier, MD;

43.   Deposition transcript of Valeriano Simbre, II, MD;

44.     Deposition transcript of Donald Fields, DO;

45.     Deposition transcript of Nancy Hernandez;

46.     Deposition transcript of Carolyn Rosel;

47.     Deposition transcript of Evangelina Nunez;

48.     Deposition transcript of Araselia Garcia;

49.     Deposition transcript of Elaine Acasio;

50.     Deposition transcript of David Hodge, MD

51.     Deposition transcript of John E. Dinsmore, MD;

52.     Deposition transcripts of Lorena Stephanie Alvarado;

53.     Deposition transcripts of Lorena Alvarado;

54.     Medical chart of Lorena Stephanie Alvarado from Children's Hospital Central

California;

55.     Home Healthcare records of Lorena Stephanie Alvarado from Children's

Hospital Central California;

56.     Pelvis CT study of Lorena Stephanie Alvarado on November 15, 2004 at

Children's Hospital Central California;

57.     Pelvis CT study of Lorena Stephanie Alvarado on November 23, 2004 at

Children's Hospital Central California;

58.     Records of treatment of Lorena Stephanie Alvarado from San Joaquin Valley

Rehabilitation;

59.     Records of treatment of Lorena Stephanie Alvarado from Camarena Medical

Center;

60.    Records of treatment of Lorena Stephanie Alvarado from Madera Children's

Medical Clinic;

61.    Records of treatment of Lorena Stephanie Alvarado from Rogelio Hernandez,

M.D.;

62.    Records of treatment of Lorena Stephanie Alvarado from Northwest Medical

Group;

63.    Records of treatment of Lorena Stephanie Alvarado from Central California Ear

Nose & Throat;

64.    Records of treatment of Lorena Stephanie Alvarado from Eye-Q Vision Center;

65.    Records of treatment of Lorena Stephanie Alvarado from Merced Hearing Aid

Center;

66.    Records of treatment of Lorena Stephanie Alvarado from Aftab Ahmad Naz,

MD;

67.    Records of treatment of Lorena Stephanie Alvarado from Neil Kornzweig, MD;

68.    Insurance records regarding Lorena Stephanie Alvarado from Blue Cross;

69.    Records regarding Lorena Stephanie Alvarado from California Children's

Services;

70.    School records of Lorena Stephanie Alvarado from Lincoln Elementary School;

71.    School records of Lorena Stephanie Alvarado from Valley Park Elementary;

72.    School records of Lorena Stephanie Alvarado from Madera Unified School

District;

73.    Demonstrative aids as well as any documents consulted by, referred to or relied upon by the expert witnesses in forming their opinions or that form a basis for their opinions, including but not limited to texts, periodicals, and articles;

74.    Any exhibit identified or utilized by any other party in this action.

# EXHIBIT 11

## DEFENDANT UNITED STATES OF AMERICA'S
## EXHIBIT 11 TO THE JOINT PRE-TRIAL STATEMENT

### DEFENDANT USA'S DISCOVERY DOCUMENTS

1. Deposition excerpts of Emilie Joy Ratuita, Pharm.D., taken on May 5, 2009.

2. Defendant United States of America's ("USA") First Set of Interrogatories to Plaintiff Lorena S. Alvarado ("Plaintiff").

3. Defendant/Third-Party Plaintiff's First Set of Interrogatories to Third-Party Defendant John E. Dinsmore, MD.

4. Defendant/Third-Party Plaintiff's First Set of Interrogatories to Third-Party Defendant Jill Ghanbarian, FNP.

5. Defendant/Third-Party Plaintiff's First Set of Interrogatories to Third-Party Defendant David Hodge, MD.

6. Defendant/Third-Party Plaintiff's First Set of Interrogatories to Third-Party Defendant Children's Hospital Central California ("CHCC").

7. Defendant/Third-Party Plaintiff's Second Set of Interrogatories to Plaintiff.

8. Defendant/Third-Party Plaintiff's First Request for Admissions to Plaintiff.

9.  Plaintiff's Responses To Interrogatories (Set No. One)
    Propounded By Defendant USA.

10. Third-Party Defendant CHCC's Responses to
    Defendant/Third-Party Plaintiff's First Set of
    Interrogatories.

11. Third-Party Defendant Jill Ghanbarian, FNP's Response to
    Defendant/Third-Party Plaintiff's First Set of
    Interrogatories.

12. Third-Party Defendant John E. Dinsmore, MD's Responses to
    Defendant/Third-Party Plaintiff's First Set of
    Interrogatories.

13. Third-Party Defendant Jill Ghanbarian, FNP's Supplemental
    response to Defendant/Third-Party Plaintiff's First Set of
    Interrogatories.

14. Plaintiff's Responses to Request for Admissions (Set One)
    Propounded By Defendant USA.

15. Plaintiff's Responses to Interrogatories (Set Two)
    Propounded By Defendant USA.

16. Third-Party Defendant David Hodge, MD's Responses to First
    Set of Interrogatories Propounded by Defendant/Third-Party
    Plaintiff USA.

17. Correspondence from Jerry Jones to Jeff Lodge dated
    March 26, 2009, re further responses to discovery pursuant
    to meet and confer.

2      Defendant USA's Exhibit 11 to the Joint
       Pre-Trial Statement

18.  Correspondence from Jerry Jones to Jeff Lodge dated May 6,
2009 re p. 11 from Plaintiff's Home Health Care Chart.